UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DUBLINER, INC.,                                    )
                                                   )
            Plaintiff/Counterclaim                 )
            Defendant,                             )
    v.                                             )        CIVIL ACTION
                                                   )        NO. 23-10567-JGD
EAST COAST TAVERN GROUP, INC. and                  )
INISHOWEN INC.,                                    )
                                                   )
            Defendants/Counterclaim                )
            Plaintiffs.                            )

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S
## MOTION TO DISMISS DEFENDANTS' FIRST AMENDED COUNTERCLAIMS

December 13, 2023

DEIN, U.S.M.J.

### I.    INTRODUCTION

The plaintiff, Dubliner, Inc. ("Dubliner"), is a District of Columbia corporation which

owns and operates "The Dubliner," a restaurant and pub located in Washington, D.C.  Dubliner

holds various federally-registered trademarks, or "marks," which it purports to use in

connection with restaurant and bar services, among other uses.  On March 14, 2023, Dubliner

filed suit against two Massachusetts corporations, East Coast Tavern Group, Inc. ("East Coast

Tavern") and Inishowen Inc. ("Inishowen") (collectively, the "Defendants"), and others,

asserting numerous claims related to the alleged unlawful and unauthorized use of its

trademarks.  On April 20, 2023, Dubliner filed an amended complaint, this time naming only

East Coast Tavern and Inishowen as defendants ("Am. Compl.") (Docket No. 6) and asserting

Infringement of Plaintiff's Federally Registered Dubliner Marks under 15 U.S.C. § 1114 (Count I);

Federal False Designation of Origin and Federal Unfair Competition Relating to Plaintiff's

Dubliner Marks under 15 U.S.C. § 1125(a) (Count II); Massachusetts Common Law Trademark

Infringement (Count III); Unfair Competition under Mass. Gen. Laws C. 93A (Count IV); and

Common Law Unfair Competition (Count IV [*sic*]).  (Am. Compl. ¶¶ 40-82).  Specifically, Dubliner

alleges that the Defendants infringed upon its federally-registered marks through the

Defendants' unauthorized and alleged overlapping use of one of those marks, and variations of

that mark, in connection with a restaurant and bar — also named "The Dubliner" — which the

Defendants opened, and which they currently operate, in Boston, Massachusetts.  (Am. Compl.

¶¶ 1-3, 28-29).

In an Answer filed on June 19, 2023, the Defendants raised affirmative defenses and

brought various counterclaims against Dubliner (Docket No. 7).  On July 31, 2023, the

Defendants again filed an Answer and in it amended their counterclaims against Dubliner

("Defs. Am. Countercl.") (Docket No. 29), asserting Declaratory Judgment of Partial Cancellation

of U.S. Reg. No. 5,045,229 (First Counterclaim) and Declaratory Judgment of Partial Cancellation

of U.S. Reg. No. 5,045,229 (Second Counterclaim) (collectively, the "Counterclaims").  (Defs.

Am. Countercl. ¶¶ 7-34).[1]

This matter is presently before the court on plaintiff Dubliner's "Motion to Dismiss

Defendants' First Amended Counterclaims" ("Mot. Dismiss") (Docket No. 37).  By its motion,

---

[1] The Counterclaims begin on page 12 of "Defendants East Coast Tavern Group, Inc. and Inishowen, Inc.'s Answer to Plaintiff Dubliner, Inc.'s First Amended Complaint, Affirmative Defenses, and First Amended Counterclaims" (Docket No. 29).  While the U.S. Registration Number referred to in the captions of the Counterclaims is "5,045,229," this is a typographical error, and it is undisputed that the U.S. Registration Number for the patent at issue is "2,724,229."

Dubliner contends that the Defendants' Counterclaims "fail to plausibly allege either theory (fraud or abandonment)" asserted and that they should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  (Mot. Dismiss at 1).  For the reasons detailed herein, the Defendants have not alleged sufficient facts to withstand a motion to dismiss, and therefore, Dubliner's Motion to Dismiss the Amended Counterclaims is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>

Subject to pleading requirements discussed more fully below, when ruling on a motion to dismiss a counterclaim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "[t]he court must accept all factual averments in the counterclaim as true and draw all reasonable inferences in the counter-claimant's favor."  <u>Brandt v. Advanced Cell Tech., Inc.</u>, 349 F. Supp. 2d 54, 57 (D. Mass. 2003).  In doing so, the court "may properly take into account certain types of documents outside the counterclaim without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to the claims; and (4) documents that are sufficiently referred to in the counterclaim."  <u>DSI Assignments, LLC for benefit of creditors of Pearl Automation, Inc. v. Am. Road Prods., Inc.</u>, Civil Action No. 17-11963-FDS, 2018 WL 3912247, at *1 n.1 (D. Mass. Aug. 15, 2018) (citing <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)).  Applying these principles to the instant case, the relevant facts are as follows.

### <u>The Lanham Act, 15 U.S.C. §§ 1051 et seq., and Trademarks -- Generally</u>

This litigation concerns a dispute over the use of certain federally-registered trademarks, or "marks."  The Lanham Act, 15 U.S.C. §§ 1051 et seq., sets forth a system of national trademark registration and provides for the protection of such registered marks,

[3]

among other things.  "Trademark rights may arise under either the Lanham Act or under common law, but in either circumstance, the right is conditioned upon use in commerce."  <u>Gen. Healthcare Ltd. v. Qashat</u>, 364 F.3d 332, 335 (1st Cir. 2004).  Under the Lanham Act, a registered trademark is to be used by the registrant "in commerce" and in connection with certain goods or services, specified in the trademark's registration as those goods or services "with which the mark is used."  15 U.S.C. § 1051.  "A mark is deemed 'in use in commerce' when it is affixed to the goods with which it is associated and those goods are then 'sold or transported in commerce.'"  <u>Gen. Healthcare Ltd.</u>, 364 F.3d at 335 (quoting 15 U.S.C. § 1127). After continuous use of the registered mark for five consecutive years, a registrant may file an affidavit of incontestability under 15 U.S.C. § 1065.  Such incontestability status "limits the circumstances under which a registration may be cancelled" to certain challenges, including, <i>inter alia</i>, "fraudulent acquisition" or abandonment.  <u>Gen. Healthcare Ltd.</u>, 364 F.3d at 334 n.4 (citing 15 U.S.C. § 1065); <u>see</u> 15 U.S.C. § 1064; <u>see also</u> <u>Viña Undurraga S.A. v. Serine-Cannonau Vineyard, Inc.</u>, No. CV 15-9658 PSG (JPRx), 2017 WL 11636421, at *7 (C.D. Cal. May 17, 2017) ("Once the PTO has deemed a mark incontestable, a party may challenge it under only two enumerated statutory cancellation provisions: (1) section 1064 of Title 15 of the U.S. Code and (2) section 1115(b) of Title 15 of the U.S. Code.").

### The "DUBLINER" ('229 Registration) and "AULD DUBLINER" ('267 Registration) Marks

On April 30, 2002, Dubliner applied to the U.S. Patent and Trademark Office ("PTO") to register the mark "DUBLINER" in connection with, among other uses, "beer and ale."  (Defs. Am. Countercl. ¶ 9).  As part of that application, Dubliner submitted a "specimen of use" in the form of what the Defendants contend to be a photo of a draught beer tap displaying the word

[4]

"DUBLINER." (Id.). On June 10, 2003, the PTO issued Registration Number 2,724,229 for the

DUBLINER mark (the "'229 Registration"), and in that registration, listed "beer; ale" as covered

"goods or services" under the mark. (Id. ¶¶ 8, 10). On June 7, 2013, Dubliner filed an

Application for Renewal of Registration for its DUBLINER mark and included the draught beer

tap as its specimen of use. (Id. ¶ 11). The PTO accepted the application on June 24, 2013. (Id.).

On January 10, 2023, Dubliner, through its attorney Christopher Dolan, filed a Section 15

Declaration of Incontestability (the "Section 15 Declaration") with the PTO for the '229

Registration, and in the Section 15 Declaration, represented in a sworn statement that Dubliner

was still using the DUBLINER mark "in connection with **all** goods services, or to indicate

membership in the collective membership organization listed in the existing registration for this

class: Beer and ale." (Id. ¶¶ 12-13). Dubliner did not accompany its Section 15 Declaration with

any "specimen," or additional supporting evidence. (Id. ¶ 13).

On November 9, 2015, Dubliner had submitted a separate application to the PTO to

federally register a separate mark, "AULD DUBLINER," also in connection with "ale, beer." (Id. ¶

27). As part of that application, Dubliner included a current copy of its "Beers" menu from its

Washington, D.C. establishment as a "specimen of use." (Id.). The PTO later registered that

mark as U.S. Registration Number 5,207,267 (the "'267 Registration"). (Id.).

## The Counterclaims

The Defendants have brought two Counterclaims, each alleging a separate basis for

partial cancellation of the DUBLINER mark's '229 Registration under federal law. In their First

Counterclaim, alleging fraud, the Defendants contend that Dubliner's representation in its

Section 15 Declaration that it was "still using" its registered DUBLINER mark in connection with

"beer; ale" was "knowingly and intentionally false" and was "made with the intent to deceive, mislead, and/or improperly induce the PTO with respect to the scope of the '229 Registration," and for that reason, seek a declaratory judgment partially cancelling the registration under 15 U.S.C. §§ 1064 and 1119 of the Lanham Act so that "beer; ale" are removed from the "goods and services" covered by the mark.  (Id. ¶¶ 13, 29-30).  In their Second Counterclaim, the Defendants contend that Dubliner abandoned its use of the DUBLINER mark to "identify 'beer; ale' at least three years ago without resumption," and did so with the "intention not to resume use of such mark to identify 'beer' or 'ale.'"  (Id. ¶ 33).  For that reason, the Defendants seek a declaratory judgment partially cancelling the '229 Registration under 15 U.S.C. § 1127 of the Lanham Act in order "to delete reference to 'beer; ale.'"  (Id. ¶ 34).

In support of their Counterclaims, and using The Internet Archive's "Wayback Machine," the Defendants claim that, at various points between June 24, 2021 and January 9, 2023 (the day before Dubliner's submission of its Section 15 Declaration), the website for Dubliner's Washington, D.C. establishment and the online menu listed therein contained no evidence of the "use of any 'beer or ale' identified by the DUBLINER Mark" or the evidence of any image of "the use of the DUBLINER Mark in close proximity to 'beer' or 'ale.'"[2]  (Id. ¶¶ 16-24).  Actual pictures or captures of the referenced menus, however, are not included.  In further support of this position, the Defendants do include a photograph purporting to show the interior of

---

[2] The "Wayback Machine," owned and supported by non-profit The Internet Archive is, by its own description, "a digital library of Internet sites and other cultural artifacts in digital form."  See About the Internet Archive, The Internet Archive, https://archive.org/about/ (last visited Dec. 12, 2023); Internet Archive: Wayback Machine, The Internet Archive, https://archive.org/web/ (last visited Dec. 12, 2023). Using the Wayback Machine, users are able to access more than twenty-six (26) "years of web history." (Id. at About the Internet Archive).

Dubliner's Washington, D.C. establishment and argue that a beer tap displaying the DUBLINER mark, such as the kind Dubliner submitted as a "specimen of use" with its '229 Registration, is conspicuously absent.  (Id. ¶¶ 25-26).  Finally, the Defendants assert that Dubliner's registration of a new mark—AULD DUBLINER—"for the same goods (i.e., 'beer; ale')" further supports their theory that Dubliner had no intention "to continue to use the DUBLINER Mark" in connection with "beer" and "ale."  (Id. ¶¶ 27-28).

Additional facts relevant to this court's analysis are detailed below.

### III.  ANALYSIS

#### A.  Standard of Review

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) test the sufficiency of the pleadings. When confronted with a motion to dismiss a counterclaim, the court accepts as true all well-pleaded facts in the counterclaim, draws all reasonable inferences in favor of the counterclaimant, and looks to whether, "under any theory," the allegations of the counterclaim "are sufficient to state a cause of action[.]"  Brandt, 349 F. Supp. 2d at 57.  Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate if the counterclaim, so viewed, fails to allege "a plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).  Determining whether such relief is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  "In order to survive a motion to dismiss, the complaint must plead sufficient facts to render the plaintiff's entitlement to relief plausible, and not merely possible."  In re Genzyme Corp. Sec. Litig., 754 F.3d 31, 40 (1st

Cir. 2014) (citing <u>Bell Atl. Corp.</u>, 550 U.S. at 559, 127 S. Ct. at 1967).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Ashcroft</u>, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

What is more, the standard for allegations of fraud is a heightened pleading standard. Under Fed. R. Civ. P. 9(b), a party which alleges fraud in its counterclaim "must state with particularity the circumstances constituting fraud[.]"  While, under Rule 9(b), "intent, knowledge, and other conditions of a person's mind may be alleged generally[,]" a pleading of this sort must nevertheless "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." <u>PetEdge, Inc. v. Marketfleet Sourcing, Inc.</u>, Civil Action No. 16-12562-FDS, 2017 WL 2983086, at *2 (D. Mass. July 12, 2017) (quoting <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1327 (Fed. Cir. 2009)).  "A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof." <u>In re Bose Corp.</u>, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (citing <u>W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.</u>, 377 F.2d 1001, 1004 (C.C.P.A. 1967)).

Finding each of the Defendants' Counterclaims deficient under such a standard, Dubliner's Motion to Dismiss the Counterclaims is therefore allowed.

### B.  15 U.S.C. §§ 1064 and 1119 -- Cancellation of a Mark's Registration Due to Fraud

In their First Counterclaim, the Defendants assert that the '229 Registration should be partially cancelled under 15 U.S.C. §§ 1064 and 1119 because of the "knowing and intentional misrepresentation of a material fact" they allege Dubliner made in connection with the filing of

its Section 15 Declaration of Incontestability.  (Defs. Am. Countercl. ¶ 30).  15 U.S.C. § 1064(3)

allows, in relevant part, for a party to petition to cancel a registered mark where its registration

or renewal "was obtained fraudulently."  In re Bose Corp., 580 F.3d at 1243.  15 U.S.C. § 1119,

in turn, enables a reviewing court, "[i]n any action involving a registered mark" to, *inter alia*,

"order the cancelation of registrations, in whole or in part[.]"

       To establish "a claim of fraud in the procurement of a federal registration,

[counterclaim] plaintiff must prove . . . by clear and convincing evidence: (1) that [counterclaim]

defendant made a false representation to the PTO regarding a material fact; (2) that

[counterclaim] defendant knew that the representation was false; (3) that [counterclaim]

defendant intended to induce the PTO to act in reliance on the misrepresentation; and (4) the

PTO was thereby deceived into registering the mark."  SoClean, Inc. v. Sunset Healthcare Sols.,

Inc., 554 F. Supp. 3d 284, 295 (D. Mass. 2021) (quoting Bay State Sav. Bank v. Baystate Fin.

Servs., LLC, 484 F. Supp. 2d 205, 220 (D. Mass. 2007)) (alterations added).  Intent, in this

context, "can be inferred from indirect and circumstantial evidence[,] [b]ut such evidence must

still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the

deceptive intent requirement."  In re Bose Corp., 580 F.3d at 1245 (quoting Star Sci. Inc. v. R.J.

Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008)).  "[A]bsent the requisite intent to

mislead the PTO, even a material misrepresentation would not qualify as fraud under the

Lanham Act warranting cancellation."  Id. at 1243 (citing King Auto., Inc. v. Speedy Muffler King, Inc., 667 F.2d 1008, 1011 n.4 (C.C.P.A. 1981)).

            The Defendants Fail to Allege Fraud in the Registration

       The Defendants seek partial cancellation of the DUBLINER Mark (the '229 Registration) "pursuant to 15 U.S.C. §§ 1064 and 1119 . . . by virtue of the fraud perpetuated on the PTO" by Dubliner through Attorney Dolan's "knowing and intentional misrepresentation of a material fact" in connection with the Section 15 Declaration.  (Defs. Am. Countercl. ¶ 30).  Yet, the Defendants fail to allege any basis for fraud in connection with the actual *registration* or renewal of the mark, as is required under 15 U.S.C. § 1064(3), and instead premise the fraud on alleged false statements Dubliner made in connection with its *Section 15 Declaration*.  While not argued by Dubliner, there is substantial support for the proposition that 15 U.S.C. § 1064(3) only provides for the cancellation of a trademark's registration where that *registration* was fraudulently procured, and not for cancellation of a trademark's registration on the basis of fraud made in connection with a Section 15 Declaration of Incontestability.  See J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:81 (5th ed.) ("15 U.S.C.A. § 1064(3) permits cancellation of a registration at any time 'if the its [*sic*] registration was obtained fraudulently.'     But incontestable status does not 'obtain' the 'registration.'  The registration already existed with 'contestable' status") (alteration added); see also Great Concepts, LLC v. Chutter, Inc., 84 F.4th 1014, 1020 (Fed. Cir. 2023) (15 U.S.C § 1064, "which allows a third party to seek cancellation of registration when the 'registration was obtained

fraudulently,' does not authorize cancellation of a registration when the incontestability status of that mark is 'obtained fraudulently.'").[3]

A separate section under the Lanham Act—15 U.S.C. § 1115(b)(1)—provides the "remedy for fraud in obtaining incontestable status." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:81 (5th ed.). Nevertheless, courts recognize that even a fraud claim premised on § 1115(b) does not provide for the cancellation of a mark's registration, as § 1064(3) does, but only for the invalidation of a mark's incontestability status. Thus, as one court explained:

> If the petitioner successfully challenges the mark under a ground in § 1064, the Court may invalidate the mark's incontestability status *and* cancel its registration. See 15 U.S.C. § 1064(c). However, if the petitioner successfully challenges the mark under a ground in § 1115(b), the Court may invalidate only the mark's incontestability status. . . . Although Defendant contends that the fraudulent statement in the § 15 incontestability application is ground for cancelling the registration of the '400 mark altogether, this is not so. A finding of fraud in connection with a § 15 application is not the same as a finding of fraud in connection with a trademark registration under § 1064(3). Rather, the appropriate remedy for a fraudulent statement in a § 15 application is to eliminate the incontestability status of the mark. Thus, if Defendant proves that Plaintiff made fraudulent statements to obtain incontestability status, Defendant can invalidate the '400 mark's incontestability status, but not its registration.

Viña Undurraga, S.A., 2017 WL 11636421, at *7-8 (internal citations omitted). In sum, "[g]iven that registration and incontestability are different rights, and [§ 1064] only identifies fraud in connection with acquiring one of these rights (registration) as being a basis for a cancellation

---

[3] But see Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir. 1990) ("filing a fraudulent incontestability affidavit provides a basis for canceling the registration itself.").

proceeding at the Board, it follows that fraud in connection with acquiring incontestable status is not a basis for a [§ 1064] cancellation proceeding."  <u>Great Concepts</u>, 84 F.4th at 1021.

While the Defendants recite the history of the '229 Registration, the sole allegation of fraud on which their First Counterclaim rests is an allegation of a "knowing and intentional misrepresentation of a material fact" made in connection with the Section 15 Declaration. (Defs. Am. Countercl. ¶ 30).  The failure to allege fraud in the registration or renewal of the DUBLINER mark warrants the dismissal of the First Counterclaim.  <u>See</u> <u>Lorenzana v. S. Am.</u> <u>Rests. Corp.</u>, 799 F.3d 31, 35 (1st Cir. 2015) (where complaint fails to allege an actionable false statement, complaint dismissed without addressing the heightened pleading requirements of Rule 9(b)).

<u>The Allegations of Fraud Are Insufficient</u>

Even assuming, *arguendo*, that a misrepresentation in a Declaration of Incontestability may form the basis of a fraudulent procurement claim, the allegations fail to meet the heightened pleading requirements of Rule 9(b).  The Defendants' allegation that Dubliner's attorney, Christopher Dolan, made a "knowing and intentional misrepresentation of a material fact" (Defs. Am. Countercl. ¶ 30) is not sufficiently supported by the sort of "underlying facts" necessary to suggest that the statements Attorney Dolan made were knowingly false or intentional, and such amounts to a mere legal conclusion.  <u>PetEdge</u>, 2017 WL 2983086, at *2. As an initial matter, and as detailed more fully below, Defendants have failed to allege actual facts which support the conclusion that Dubliner was no longer using the DUBLINER mark in connection with beer and ale and, therefore, do not support their allegations that any representations were false.  Moreover, even a most liberal reading of the First Counterclaim

might support a plausible finding of an unknowing representation or negligence, but not fraud. "The principle that the standard for finding intent to deceive is stricter than the standard for negligence or gross negligence . . . applies with equal force to trademark fraud cases." In re Bose Corp., 580 F.3d at 1244-45. The allegations here are insufficient.

Because the Defendants incorrectly premise their § 1064 counterclaim on allegations of fraud made in connection with Dubliner's Section 15 Declaration but make no allegations of fraud with respect to the trademark's registration or renewal, and because the Defendants have not sufficiently alleged fraud, the Defendants fail to state a plausible claim for cancellation on fraud grounds under 15 U.S.C. § 1064.

## C. 15 U.S.C. § 1127-- Cancellation of a Mark's Registration Due to Abandonment

In their Second Counterclaim, the Defendants again assert that Dubliner's '229 Registration should be partially cancelled on the separate "ground of abandonment under 15 U.S.C. § 1127." (Defs. Am. Countercl. ¶ 34). 15 U.S.C. § 1064(3) also allows for a party to bring a petition seeking cancellation of a registered mark if such mark "has been abandoned." 15 U.S.C. § 1127 defines a mark as "abandoned" if, *inter alia*, the mark's use:

> has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

Thus, under 15 U.S.C. § 1127, the two elements that make up a claim for abandonment include: "(1) nonuse; and (2) intent not to resume use." Tiger Lily Ventures Ltd. v. Barclays Cap. Inc., 35 F.4th 1352, 1360 (Fed. Cir. 2022). "[W]hether a trademark holder has abandoned its use of a mark is a question of fact." In re JobDiva, Inc., 843 F.3d 936, 940 (Fed. Cir. 2016) (citing

On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1087 (Fed. Cir. 2000)).  "'To rebut a

prima facie showing of abandonment, a purported trademark owner must demonstrate that it

intends to resume use 'in the reasonably foreseeable future.'"  Beram v. Ceaco, Inc., 219 F.

Supp. 3d 274, 281 (D. Mass. 2016) (quoting Gen. Healthcare Ltd., 364 F.3d at 337) (additional

citation omitted).  "[B]ecause abandonment entails the forfeiture of a property interest, courts

in this district have determined that it must be 'proved by clear and convincing evidence.'"

Diálogo, LLC v. Bauza, 467 F. Supp. 2d 115, 128 (D. Mass. 2006) (quoting Micromuse, Inc. v.

Micromuse, PLC., 304 F. Supp. 2d 202, 216 (D. Mass. 2004)).

<u>Sufficiency of the Defendants' Allegations of Abandonment</u>

The Defendants have also failed to adequately plead their separate counterclaim that

the '229 Registration be partially cancelled on the ground of abandonment.  In their Second

Counterclaim, the Defendants argue that Dubliner's '229 Registration—the DUBLINER mark—

should be partially cancelled so as to "delete reference to 'beer; ale'" because Dubliner ceased

use of its DUBLINER mark in identifying "beer; ale" and did so with the intent not to resume

use.  (Defs. Am. Countercl. ¶¶ 31-34).  To support their Second Counterclaim and separate

theory of abandonment, the Defendants advance three core arguments:

(1) the lack of evidence of the "use of any 'beer or ale' identified by the DUBLINER Mark . . . in the 'Beers' menu for the establishment" and no "image of the use of the DUBLINER Mark in close proximity to 'beer' or 'ale'" on the menu, as shown in archived Wayback Machine captures of the online menu for Dubliner's Washington, D.C. establishment, at various points in time, as indicative of nonuse;

(2) a photograph of the inside of Dubliner's Washington, D.C. establishment taken from an online article not published by the restaurant, purportedly showing "all of the beer taps" but no draft beer tap showing the DUBLINER mark or "the use of the DUBLINER Mark in close proximity to 'beer' or 'ale,'" as indicative of

[14]

nonuse; and

(3) Dubliner's registration of a separate mark—AULD DUBLINER—in 2015, also "in connection with 'ale, beer'" as indicative of its intent not to continue using its DUBLINER mark for "beer" and "ale."

(See Defs. Am. Countercl. ¶¶ 16-28).  Here, even when "draw[ing] all reasonable inferences in the counter-claimant's favor[,]" the Defendants' allegations fail to support a plausible theory of abandonment.  Brandt, 349 F. Supp. 2d at 57.

Menu Captures by the Wayback Machine

While the Defendants allege that any use of the DUBLINER mark in connection with "beer" or "ale" is absent from the menu of Dubliner's Washington, D.C. establishment as shown through references to Wayback Machine archived webpages of the menu from 2021 to 2023, they do not actually offer these archived pages as an exhibit to their Counterclaims.  (Defs. Am. Countercl. ¶¶ 16-28).  In support of its motion to dismiss the Counterclaims, Dubliner provides captures of the same Wayback Machine archived pages of the menu, on nearly the same dates. (See Pl. Memo. (Docket No. 38) at Ex. A).[4]  These captures, which depict the archived webpages at issue, are "central to the counterclaimant's claim," and as such, this court may properly consider them in evaluating the allegations of abandonment.  Bose Corp. v. Lightspeed Aviation, Inc., 691 F. Supp. 2d 275, 278 (D. Mass. 2010).  Furthermore, the archived pages have been "sufficiently referred to in the [counterclaim]" by the Defendants.  DSI Assignments, LLC, 2018 WL 3912247, at *1 (alteration in original) (quoting Watterson, 987 F.2d at 3) (and considering facts not only outlined in the counterclaim but also facts taken from "certain documents

_____

[4] While there are some minor discrepancies with respect to the dates, the parties do not contend that any such differences are significant.

[15]

provided by the parties, to the extent they were sufficiently referred to in the [counterclaim].").

"When . . . a complaint's factual allegations are expressly linked to – and admittedly dependent

upon – a document (the authenticity of which is not challenged), . . . the trial court can review it

in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137

F.3d 12, 17 (1st Cir. 1998).

   Moreover, "when plaintiff fails to introduce a pertinent document as part of his

pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."

Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) (further finding that the

document at issue "was not merely referred to in plaintiffs' complaint but was absolutely

central to it" and would have had to have been offered for the plaintiffs "to prove their case.")

(additional citation omitted).  "When such documents contradict allegations in the complaint,

the documents trump the allegations." Henning v. Wachovia Mortg., FSB, 969 F. Supp. 2d 135,

147 (D. Mass. 2013) (looking to documents outside of the four corners of the complaint in

finding that an allegation made by plaintiff was contradicted by those documents' own terms);

Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) ("The court need not accept

as true an allegation that is contradicted by documents on which the complaint relies.")

(citation and internal quotations omitted).  Here, the authenticity of the Wayback Machine

menu captures submitted by Dubliner is not in dispute, and the captures are dispositive.  See

Walsh v. Teltech Sys. Inc., Civil Action No. 13-13064-RWZ, 2015 WL 12856456, at *1 n.2 (D.

Mass. July 30, 2015), aff'd, 821 F.3d 155 (1st Cir. 2016) (taking judicial notice of the content of

certain archived Wayback Machine webpages "as facts that can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned" and listing cases where the same was followed) (additional citation omitted).

    <u>The DUBLINER Mark Was Not Abandoned</u>

    As can be seen in each Wayback Machine capture offered by Dubliner, and contrary to the Defendants' allegations, the DUBLINER mark remains in continuous use for beer and ale and the captures effectively contradict the Defendants' allegations of nonuse.  In each capture, the mark is used on the menu "in commerce," and in continuous connection with "beer" or "ale"; furthermore, each use is listed under the "Beer," "Dubliner Drinks," or "Draft Beer" sections of Dubliner's menu and in clear proximity to other menu items associated with "beer" or "ale."  15 U.S.C. § 1051.  "For goods, a mark is 'used in commerce' 'when (A) it is placed in any manner on the goods or their containers or the displays associated therewith . . . and (B) the goods are sold or transported in commerce.'"  <u>To-Ricos, Ltd. v. Productos Avicolas Del Sur, Inc.</u>, Civil No. 19-1592 (JAG), 2022 WL 19355737, at *2 (D.P.R. Sept. 22, 2022) (quoting 15 U.S.C. § 1127).  The terms of the statute are met if the mark is placed "in any manner" on the "displays associated" with the goods.  <u>In re Marriot Corp.</u>, 459 F.2d 525, 525-27 (C.C.P.A. 1972) (quoting 15 U.S.C. § 1127 for the proposition that the association of a mark listed on a menu with a good which the customer receives—here, a sandwich—"is sufficient to constitute use of the mark on 'displays associated' with the goods"); <u>see also</u> J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:30 (5th ed.) (citing <u>In re Marriot Corp.</u>, 459 F.2d at 526).

    Here, each instance of the DUBLINER mark used on its menu in connection with "beer" or "ale" is sufficient to constitute the mark's use in commerce.  Dubliner has submitted date-stamped, archived pages from March 7, 2023, December 4, 2022, August 16, 2022, June 30,

2022, January 20, 2022, December 5, 2021, October 22, 2021, and June 24, 2021.  (Defs. Am.

Countercl. ¶¶ 16-24; Mot. Dismiss, Ex. A).  These menu captures show that the use of

DUBLINER for beer and ale has not been abandoned.

      The December 5, 2021, October 22, 2021, and June 24, 2021 archived pages of the

menus contain a section entitled "Dubliner Drinks," under which there is a section entitled

"Draft Beers." "Dubliner Amber Ale" heads the list of these draft beers.  (Mot. Dismiss, Ex. A at

CM/ECF Pages 28, 48, 59 of 66).[5]  These uses, alone, defeat Defendants' claim that the use of

the DUBLINER mark for beer and ale had been abandoned for three years prior to suit.

      The same menu captures, as well as the menu captures from March 7, 2023, December

4, 2022, August 16, 2022, June 30, 2022, and January 20, 2022 also include the following in a

section of draft beers:

### AULD DUBLINER AMBER ALE BY DC BRAU
bold malt backbone with rich toffee, subtle notes of cocoa,
and a delicate biscuit and peppery finish, Washington, DC

* * *

### DUBLINER HALF & HALF
Guinness layered over Harp

### DUBLINER BLACK & AMBER
Half Guinness, Half Dubliner Amber Ale

(See Mot. Dismiss, Ex. A at CM/ECF Pages 4-5, 8-9, 12-13, 16-17, 20-21, 30, 35, 42-43, 61 of 66).

These specific references to "Dubliner Amber Ale" and "Dubliner Black & Amber" also defeat

the contention that the mark had been abandoned for beer and ale.

---

[5] Citations to page numbers refer to the parties' own page numbering.  Citations to CM/ECF page
numbers refer to the court's numbering system located at the top right of the page.

To avoid this conclusion, in their opposition to Dubliner's Motion to Dismiss ("Defs. Opp.") (Docket No. 42), the Defendants argue that the references to "Dubliner Amber Ale" in "Dubliner Black & Amber" "plausibly refers to 'Auld Dubliner Amber Ale by DC Brau[.]'" (Defs. Opp. at 10). They base this argument on their contention that "there is no other 'amber ale' identified on the menus attached to Dubliner DC's motion that uses any other permutation of 'Dubliner.'" (Id.). The simple response to this assertion is that the menu captures from 2021 had a separate listing of "Dubliner Amber Ale" under its listing of draft beers. "Dubliner Amber Ale" and "Auld Dubliner Amber Ale by DC Brau" are listed separately in the menus. It is not reasonable to assume that they refer to the same thing.

In sum, the Defendants cannot make out a plausible claim of abandonment of the DUBLINER mark because the evidence they point to—archived pages of Dubliner's menu—shows clear and continuous use by Dubliner of its DUBLINER mark in commerce and in connection with "beer" and/or "ale" throughout the period in question.

The Photograph of the Dubliner's Washington, D.C. Establishment

In an attempt to establish abandonment of the DUBLINER mark, the Defendants include in their Counterclaims a photograph of the interior of Dubliner's Washington, D.C. establishment, taken from a third-party website, purporting "to show all of the beer taps" at the restaurant. (Defs. Am. Countercl. ¶¶ 25-26). The Defendants contend that because the photograph allegedly shows no beer tap displaying the DUBLINER mark or a "draught beer tap" which resembles that which Dubliner included as a specimen of use in its April 30, 2002 registration application, a fact-finder may infer Dubliner's abandonment of its DUBLINER mark. (Id. ¶¶ 9, 25-26). As an initial matter, with even the most generous enlargement allowed by an

Internet browser or Portable Document Format ("PDF") viewing software, given the picture's size and quality, it is not possible to determine whether or not the picture includes beer taps containing the mark at issue.  Moreover, whether Dubliner modified its beer taps in the last decade is not conclusive on the issue of abandonment.  Considering the angle and the quality of the photograph, the court gives no weight one way or the other to the photograph of Dubliner's beer taps in connection with this motion to dismiss.

The AULD DUBLINER Mark

In their third argument, the Defendants contend that Dubliner's separate registration of its AULD DUBLINER mark in 2015 for the same covered goods of "beer; ale" is indicative of its intent to no longer use its DUBLINER mark for "beer" and "ale."  (Defs. Am. Countercl. ¶¶ 27-28).  While "[i]ntent not to resume may be inferred from circumstances," Dubliner's registration of a second mark—AULD DUBLINER—does not make it plausible that it abandoned its prior-registered DUBLINER mark, let alone no longer intended to use it.  See 15 U.S.C. § 1127. Dubliner's use of AULD DUBLINER, as revealed through captures of its Washington, D.C. establishment's menu, prove the opposite.  As seen from 2021 to 2023 in Wayback Machine captures, Dubliner used AULD DUBLINER as a second mark, in addition to DUBLINER, and in connection with certain "beer" or "ale" listings on its menu.  Dubliner's registration of a subsequent trademark covering some of the same goods or services as one of its prior-registered marks does not make abandonment of that prior-registered mark plausible; instead, it likely suggests Dubliner's intent to enhance its suite of protected marks.  Furthermore, absent sufficient allegations which support a finding of nonuse—the first prong of the two-part abandonment inquiry—any contention that the registration and use of AULD DUBLINER

suggests Dubliner's intent to move away from using its prior-registered DUBLINER mark is not compelling.

Thus, for the reasons detailed above, the Defendants have also failed to adequately plead their Second Counterclaim of abandonment.  Put simply, their allegations cannot plausibly support Dubliner's "nonuse" during the time period in question, let alone any "intent not to resume use" of the DUBLINER mark.  Tiger Lily Ventures Ltd., 35 F.4th at 1360.  "In order to survive a motion to dismiss, the complaint must plead sufficient facts to render the plaintiff's entitlement to relief plausible, and not merely possible."  In re Genzyme Corp. Sec. Litig., 754 F.3d at 40 (citing Bell Atl. Corp., 550 U.S. at 559, 127 S. Ct. at 1967).  Here, the menus defeat the Defendants' claim of abandonment.

## IV. **CONCLUSION**

For all the reasons detailed herein, plaintiff Dubliner's "Motion to Dismiss Defendants' First Amended Counterclaims" (Docket No. 37) is ALLOWED.


/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge